UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CASE NO.

**FLAMBEAUX GAS & ELECTRIC LIGHTS L.L.C.** 18-11979
SECTION A
DEBTOR CHAPTER 11

### REASONS FOR DECISION

The Motion for Entry of Order Authorizing Debtor To Reject Supplemental and Amending Settlement and Mutual Release Agreement[1] filed by Flambeaux Gas & Electric Lights L.L.C ("Flambeaux") and the Objection by Bevolo Gas & Electric Lights, Inc. ("Bevolo")[2] came before the Court on November 13, 2018. The Court requested that the parties file additional briefs no later than January 15, 2018. Upon the filing of the briefs, the Court took the matter under advisement.

**I. Facts**

As their names suggest, Bevolo and Flambeaux manufacture and sell gas and electric lights, more specifically, lanterns.

In February 2011, Bevolo filed suit against Flambeaux for trademark infringement, alleging that Flambeaux copied the style and name of some of Bevolo's trademarked designs. On April 23, 2012, Flambeaux and Bevolo executed a Settlement and Mutual Release Agreement ("Original Agreement").

In September 2012, Bevolo alleged that Flambeaux violated the Original Agreement, and the parties entered mediation. On January 15, 2013, Bevolo and Flambeaux executed a

---

[1] P-56.

[2] P-59.

Supplemental and Amending Settlement and Mutual Release Agreement ("Supplemental Licensing Agreement").[3] The Supplemental Licensing Agreement requires Flambeaux to "exchange, replace, or modify all existing Noncompliant Lanterns."[4] It grants Flambeaux a trademark license:

> Effective April 23, 2012, Flambeaux shall have a personal and non-transferable worldwide, perpetual, royalty-free license and right to use the following marks as product names (including, without limitation, in advertisements, catalogs, online sales, promotional materials), or as key-words in internet marketing or pay-per-click campaigns:
>
> > "Flambeaux French Quarter"
> >
> > "Flambeaux Six-Sided French Quarter"
>
> Flambeaux is also allowed to use these terms with common articles and descriptive terms of the English language (such as "The Flambeaux French Quarter"...). Flambeaux shall maintain the quality of goods sold under such marks generally consistent with its past practices, and Bevolo shall have the right to reasonably monitor the quality of goods sold under such marks; provided, however, that Bevolo shall not harass or unnecessarily interfere with Flambeaux's business operations, and any improper attempt to do so shall constitute a material breach of this [Supplemental Licensing Agreement]. Bevolo shall accomplish monitoring by purchasing from Flambeaux at market price a licensed lantern(s) no more than once per year, starting from the effective date of this [Supplemental Licensing Agreement].[5]

The Supplemental Licensing Agreement also contains a $200,000 liquidated damages provision in the event of breach.[6]

In February 2016, Bevolo alleged that Flambeaux violated the Supplemental Licensing Agreement and initiated an arbitration proceeding. On August 16, 2017, the arbitrator found in

---

[3] P-90, Exh. A.

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 10.

favor of Bevolo and awarded Bevolo $200,000 in liquidated damages; $84,009.76 in attorney's fees; and $15,309.31 in costs.[7] Flambeaux was also required to pay the cost of arbitration, $27,830.23.

On January 3, 2018, Bevolo filed a Petition and Motion to Confirm Arbitration Award in Orleans Parish Civil District Court,[8] and on April 24, 2018, a Judgment was signed confirming the arbitration award ("Judgment").[9]

On July 31, 2018, Flambeaux filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code ("Petition Date").

Bevolo filed Proof of Claim 5 asserting an unsecured claim in the amount of $299,319.07 based on the Judgment.[10]

Flambeaux seeks to reject the Supplemental Licensing Agreement as an executory contract pursuant to 11 U.S.C. § 365.

## II. Law and Analysis

11 U.S.C. § 365 allows a trustee or debtor-in-possession to assume or reject executory contracts or unexpired leases, subject to court approval. The purpose of section 365 is to "release the debtor's estate from burdensome obligations that can impede a successful reorganization."[11]

---

[7] Proof of Claim 5, Exh. 2, p. 14.

[8] P-56, Exh. 1.

[9] Proof of Claim 5, Exh. 1.

[10] $200,000 (damages) + $84,009.76 (attorneys' fees) + $15,309.31 (costs) = $299,319.07

[11] *Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.),* 378 F.3d 511, 517 (5th Cir. 2004) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504) (5th Cir. 2000)).

3

Whether an executory contract should be assumed or rejected is generally left to the business judgment of the trustee or debtor-in-possession.[12]

### A. Executory Contract

The Supplemental Licensing Agreement is clearly a contract.[13] Therefore, its nature as executory is the only issue.

> The Code does not define "executory contract," ... Courts applying § 365(a) have indicated that an agreement is executory if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.[14]

Legislative history gives insight into the meaning of "executory contract":

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract no longer executory.[15]

---

[12] *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308-09 (5th Cir. 1985) (citations omitted). *See also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr.N.D.Tex. 2009). A more strict standard is applied in case of public interest, such as the interstate sale of electricity. *See Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511 (5th Cir. 2004). That situation is not present in the case at bar.

[13] "[A] settlement agreement is a contract..." *Houston v. Holder (Matter of Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995).

[14] *Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir. 1994) (citations omitted).

[15] H.R. REP. 95-595, 347, 1978 U.S.C.C.A.N. 5963, 6303-04. Section 365(n) deals with "intellectual property." However, trademarks are not included in the definition of "intellectual property" under 11 U.S.C. § 101(35A). 3 COLLIER ON BANKRUPTCY ¶ 365.15[2] (Richard Levin & Henry J. Sommer eds., 16th ed.).

Bevelo cites *Exxon Corp. v. Oxxford Clothes, Inc.*[16] for the assertion that it transferred limited rights to use a trademark when it executed the Supplemental Licensing Agreement, and therefore, its obligation was completed prior to the Petition Date. In *Exxon Corp.*, Exxon Corp. ("Exxon") sued Oxxford Clothes, Inc. ("Oxxford") for trademark infringement, and Oxxford filed counterclaims based on naked licensing and tarnishment-dilution. Oxxford alleged that Exxon's grant of permission to use its trademark without proper supervision to protect the quality of goods constituted an unintentional abandonment by Exxon of its trademark. The District Court granted summary judgment in favor of Exxon, and Oxxford appealed. The Fifth Circuit affirmed.

Bevelo relies on the Fifth Circuit's finding that a "license to use a mark ... is a transfer of limited rights, less than the whole interest which might have been transferred."[17] Bevolo suggests that because the transfer was completed prepetition, it had no further material obligation.

The facts of *Exxon* are distinguishable from the case at bar. *Exxon* did not involve a determination of executory status. While the case did consider the granting of a trademark in conjunction with a settlement of an infringement claim, the executory nature of the contract was not discussed nor was it relevant.

While *Exxon* was decided in 1997, a recent Fifth Circuit case provides insight into whether the Supplemental Licensing Agreement is an executory contract. In *RPD Holdings, L.L.C. v. Tech Pharmacy Services (Matter of Provider Meds, L.L.C.)*,[18] Tech Pharmacy Services ("Tech") filed suit

---

[16] *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997).

[17] *Id.* at 1076 (citing *Acme Valve & Fittings Co. v. Wayne*, 386 F.Supp. 1162, 1165 (S.D.Tex. 1974)).

[18] *RPD Holdings, L.L.C. v. Tech Pharmacy Services (Matter of Provider Meds, L.L.C.)*, 907 F.3d 845 (5th Cir. 2018).

against several related entities for patent infringement. The entities and Tech entered into a settlement agreement which granted all but one entity a "non-exclusive perpetual license" in exchange for a $4,000 fee to Tech for each machine placed in service, quarterly reports, and refraining from public comment. The parties also agreed to a mutual release.

The affiliated entities filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code but later converted to Chapter 7. The debtors listed neither the licensing agreement nor Tech on their schedules. RPD Holdings, L.L.C. ("RPD") purchased estate property. Neither the sales nor the orders approving the sales referenced the licensing agreement. However, the sale order provided that if any property was an executory contract, it was assumed.

RPD discovered the licensing agreement after the sale and concluded that it was the owner of the licensing agreement. The Bankruptcy Court held that the licensing agreement was an executory contract because each party had an unperformed obligation. Tech had an obligation to "refrain from suing ... for patent infringement for machines places in service" after the licensing agreement was executed.[19] The debtors had an obligation to pay a $4,000 fee to Tech for each machine placed in service, quarterly reports, and refraining from public comment. The Bankruptcy Court also held that the executory contract expired prior to the sale pursuant to section 365(d)(1).[20] The District Court affirmed.

On appeal to the Fifth Circuit, RPD argued:

[B]ecause the License Agreement came hand in hand with a settlement agreement to dismiss Tech['s] patent infringement suit ... with prejudice, Tech['s] sole

---

[19] *Id.* at 852.

[20] Section 365(d)(1) provides that if a Chapter 7 trustee does not assume an executory contract within 60 days of the Order for Relief, the executory contract is deemed rejected.

> executory obligation ... – to refrain from suing the [ ] debtors for patent infringement involving future machines – was illusory.
>
> \* \* \*
>
> Under RPD's view, once Tech [ ] dismissed with prejudice its claim that the [debtors'] process infringed its method patent, it could never again sue the [debtors] for using that same process, even if the [debtors] used the process after the termination of the lawsuit to place new machines into operation.[21]

The Fifth Circuit disagreed, holding that claim preclusion could not apply to acts that had not yet occurred, even when the infringement was the "essentially the same."[22] The Fifth Circuit also held that the licensing agreement was executory:

> In sum, but for the License Agreement, Tech [ ] would not be barred from suing the [ ] debtors for patent infringement stemming from their introduction of new [ ] machines—even if those machines used the same process at issue in the settled 2010 litigation. Tech [ ] had an ongoing material obligation under the License Agreement to refrain from suing the debtors.
>
> The [ ] debtors also had corresponding material obligations under the License Agreement. The License Agreement straightforwardly obligated the debtors to take certain ongoing actions, such as filing quarterly reports and not discussing the settled lawsuit.[23]

The Fifth Circuit ultimately held that the licensing agreement was deemed rejected by operation of law pursuant to section 365(d)(1) because the Chapter 7 trustee failed to assume it within 60 days of entry of the Order of Relief. Because the licensing agreement was rejected prior to the sale to RPD, it was not included in the assets RPD purchased.

---

[21] *Id.* at 852-3.

[22] *Id.* at 853 (citations omitted).

[23] *Id*. at 855.

In both *Provider Meds* and the case at bar, the issue is whether a settlement agreement coupled with a licensing agreement is an executory contract. The Fifth Circuit in *Provider Meds* ruled in the affirmative.

Like in the agreement in *Provider Meds*, Bevolo has a continuing obligation to allow Flambeaux the right to use certain marks as product names and to refrain from suing Flambeaux for using those marks. Flambeaux, in turn, has a corresponding obligation to remove any "noncompliant" lanterns from circulation. The failure of either party to fulfill its obligation would constitute a material breach of contract. Therefore, the Court finds that the Supplemental Licensing Agreement is an executory contract.

### B. Business Judgment

Whether an executory contract should be assumed or rejected is generally left to the business judgment of the trustee or debtor-in-possession.[24]

> In applying the business judgment rule in deciding whether to grant a debtor's motion to reject a contract a court is not adjured to blindly accept, but rather only to show proper deference to the business judgment of the debtor's management.
>
>        \*     \*     \*
>
> In the exercise of its business judgment, a debtor in possession may be expected to make its decisions rationally in exercising the rejection option. ... The Court must ensure the decision-making process used by a debtor in possession in exercising its powers under the Code is a sensible one.[25]

---

[24] *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308-09 (5th Cir. 1985) (citations omitted). *See also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr.N.D.Tex. 2009). A more strict standard is applied in case of public interest, such as the interstate sale of electricity. *See Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511 (5th Cir. 2004). That situation is not present in the case at bar.

[25] *In re Pilgrim's Pride Corp.*, 403 B.R. at 427 (citations omitted).

Flambeaux maintains that the Supplemental Licensing Agreement is unduly burdensome because it has no way to track noncompliant lanterns in the hands of third parties or keep them from appearing on the internet.

The Court finds that the Flambeaux's decision to reject the Supplemental Licensing Agreement was made with sound business judgment.

Flambeaux is willing to limit its rejection of the Supplemental Licensing Agreement to certain sections. However, executory contracts must be assumed or rejected in their entirety.[26] This ensures that "the obligations of an executory contract be accepted along with its benefits,"[27] and in the case of rejection, the benefits are rejected along with the obligations.

### C. Effect of Rejection

Section 365(g) provides that rejection of an executory contract is treated as a prepetition breach of that contract. The non-debtor party to a rejected contract becomes an unsecured creditor.[28]

---

[26] *RPD Holdings, L.L.C. v. Tech Pharmacy Services (Matter of Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) (citing *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996)). However, "where a single document embraces several distinct agreements," the debtor can choose whether to assume or reject each distinct agreement separately. *Stewart Title Guaranty Co.*, 83 F.3d at 741. That situation is not present in the case at bar.

[27] *In re Nat'l Gypsum Co.*, 208 F.3d at 506 (quoting *Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1998).

[28] *In re Nat'l Gypsum Co.*, 208 F.3d at 505. *See also* 3 COLLIER ON BANKRUPTCY ¶ 365.10[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

### III. Conclusion

For the reasons assigned above, the Motion for Entry of Order Authorizing Debtor To Reject Supplemental and Amending Settlement and Mutual Release Agreement[29] filed by Flambeaux is granted. The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, February 20, 2019.

                                                  Hon. Elizabeth W. Magner
                                                U.S. Bankruptcy Judge

---

[29] P-56.