**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE | CASE NO. |
| **FLAMBEAUX GAS & ELECTRIC LIGHTS, LLC,** | **18-11979** SECTION "A" |
| DEBTOR | CHAPTER 11 |

## REASONS FOR DECISION

On May 7, 2019, Bevolo Gas & Electric Lights, Inc. ("Bevolo") filed an Expedited Ex Parte Motion to Reconsider Discovery Ruling[1] (P-157) ("Motion"). The Court having reviewed the motion and applicable law, deems no rehearing necessary. For the reasons below, the Court **DENIES** Bevolo's Expedited Ex Parte Motion to Reconsider Discovery Ruling.

**I. Background:**

As their names suggest, Bevolo and Flambeaux Gas & Electric Lights, LLC ("Debtor") manufacture and sell gas and electric lights, more specifically, lanterns.

On February 16, 2011, Bevolo filed suit against Debtor for trademark infringement, trade dress infringement, trademark dilution, and unfair competition. On April 23, 2012, Debtor and Bevolo signed a settlement agreement ("Original Agreement") where Debtor agreed to undertake certain actions to remedy its conduct.

Debtor did not sufficiently comply and, in September 2012, Bevolo alleged that Debtor had violated the Original Agreement. The Parties entered mediation.

On January 15, 2013, Bevolo and Debtor executed a Supplemental and Amending Settlement and Mutual Release Agreement ("Supplemental Agreement").[2] The Supplemental Agreement

---

[1] The discovery ruling relates to P-47.
[2] P-90, Exh. A.

obligated Debtor to "exchange, replace, or modify all existing Noncompliant Lanterns."[3] It also required Debtor to send its third party sellers a vendor agreement, instructing:

a. [T]o remove and cease display, distribution, and/or resale of any and all Noncompliant Lanterns in their possession and to return all Noncompliant Lanterns to Flambeaux;
b. to cease and desist all use and distribution of, and to destroy, discard or return, any and all Marketing Materials containing any reference whatsoever to Noncompliant Lanterns as set forth in paragraph 6;
c. to revise and update any and all Marketing Materials to insert its name, "Flambeaux," in front of the term "French Quarter" every time the term "French Quarter" is used relating to 'Flambeaux's products,' as set forth in paragraph 6; and
d. to permanently refrain from using Bevolo's registered marks as set forth in paragraph 4.

Additionally, the Supplemental Agreement required Debtor to terminate its relationship with any third party seller who failed to sign and return the vendor agreement. Consequently, Debtor terminated relationships with forty (40) of its roughly eighty (80) third party sellers.

In exchange for its compliance, the Supplemental Agreement granted Debtor a trademark license:

> Effective April 23, 2012, Flambeaux shall have a personal and non-transferable worldwide, perpetual, royalty-free license and right to use the following marks as product names (including, without limitation, in advertisements, catalogs, online sales, promotional materials), or as key-words in internet marketing or pay-per-click campaigns:
>
> "Flambeaux French Quarter"
>
> "Flambeaux Six-Sided French Quarter"

---

[3] *Id.* at ¶ 3. "Noncompliant Lantern" is defined as "any and all Flambeaux Lanterns which has a name/tag located anywhere on the bottom portion of the lantern, including, but not limited to the bottom panel or the bottom portion of the door of the lantern . . . and shall be any location on a lantern below the thick black line. Noncompliant Lanterns shall not include any Flambeaux Lanterns previously sold to an end user who is not a Third Party Seller or commercial reseller." *Id.* at ¶ 1.e.

>Flambeaux is also allowed to use these terms with common articles and descriptive terms of the English language (such as "The Flambeaux French Quarter"...). Flambeaux shall maintain the quality of goods sold under such marks generally consistent with its past practices, and Bevolo shall have the right to reasonably monitor the quality of goods sold under such marks; provided, however, that Bevolo shall not harass or unnecessarily interfere with Flambeaux's business operations, and any improper attempt to do so shall constitute a material breach of this [Supplemental Licensing Agreement]. Bevolo shall accomplish monitoring by purchasing from Flambeaux at market price a licensed lantern(s) no more than once per year, starting from the effective date of this [Supplemental Licensing Agreement].[4]

In the event of breach, the Supplemental Agreement provides a $200,000 liquidated damages provision.[5]

In February 2016, Bevolo learned that a third party seller, Pine Grove Lighting, was displaying and selling Noncompliant Lanterns in its Mandeville, Louisiana store. Consequently, Bevolo alleged a further violation of the Supplemental Agreement and initiated arbitration proceedings. On August 16, 2017, the arbitrator found in Bevolo's favor and awarded it $200,000 in liquidated damages; $84,009.76 in attorney's fees; and $15,309.31 in costs.[6] Debtor was also required to pay arbitration costs of $27,830.23.

On January 3, 2018, Bevolo filed a Petition and Motion to Confirm Arbitration Award in Orleans Parish Civil District Court,[7] and on April 24, 2018, that Court signed a Judgment confirming the arbitration award ("Judgment").[8]

On July 31, 2018, Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code ("Petition Date").

---

[4] *Id.* at ¶ 5.
[5] *Id.* at ¶ 10.
[6] PoC 5, Exh. 2, p. 14.
[7] P-56, Exh. 1.
[8] PoC 5, Exh. 1.

On October 4, 2018, Bevolo filed Proof of Claim No. 5 asserting an unsecured claim in the amount of $299,319.07 based on the Judgment.[9]

On October 9, 2018, Bevolo filed Claim No. 6, asserting Debtor's on-going obligations under the Supplemental Agreement.[10] On October 23, 2018, Debtor filed a Motion to Reject the Supplemental Agreement.[11] On February 22, 2019, this Court granted the Motion.[12] As a result, the Supplemental Agreement no longer applies to the future conduct of Debtor while leaving its obligations under the Judgment and for any past transgressions intact.[13]

On April 16, 2019, Debtor filed a Motion for Entry of a Scheduling Order Regarding Rejection Damages and Administrative Expense Claims.[14] This Motion asked the Court to set a discovery schedule regarding Bevolo's rejection damages and Claim No. 6.[15] As a part of its discovery, Bevolo requests Debtor produce its third party sellers list from 2013. Debtor objects to Bevolo's request except for the two customers who still hold Debtor inventory.[16]

On April 23, 2019, the Court held a status conference regarding discovery relevant to Claim No. 6 and rejection damages.[17] Following the conference, the Court entered an order ("Order") requiring the parties to draft a confidentiality agreement and formulate written discovery to Debtor's third party sellers.[18] According to the Order, if the parties failed to agree, then each would submit

---

[9] $200,000 (damages) + $84,009.76 (attorneys' fees) + $15,309.31 (costs) = $299,319.07
[10] PoC 6.
[11] P-56.
[12] P-110.
[13] This includes Debtor's obligation to replace or modify existing Noncompliant Lanterns as well as those obligations that were the subject of the Agreement.
[14] P-129.
[15] *Id.*
[16] P-145 at 1.
[17] P-141.
[18] *Id.*

to this Court a proposed confidentiality agreement and written discovery. The Court would then conduct a hearing to determine the scope and nature of Bevolo's discovery.[19]

The parties failed to agree so the Court held a discovery hearing on April 30, 2019.[20] At the hearing, Bevolo failed to articulate any facts or circumstances that would render its discovery requests relevant.[21] As a result, the Court denied Bevolo's discovery requests on the grounds that they amounted to a fishing expedition.[22]

On May 7, 2019, Bevolo filed the instant Expedited Ex Parte Motion to Reconsider the Discovery Ruling.

**II. Legal Analysis:**

Bevolo fails to overcome the stringent burden required for a Court to reconsider its prior discovery ruling.

   **A. Motion to Reconsider**

Rule 54(b) of the Federal Rules of Civil Procedure provides that:

> [A]ny order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[23]

Under Rule 54(b), made applicable to bankruptcy by Bankruptcy Rule 7054, courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen

---

[19] *Id.*
[20] P-147.
[21] P-155.
[22] Hr'g Tr. April 30, 2019, at 13:4–6, 15:6–15, & 16:7–11, ECF No. 162; P-147.
[23] Fed. R. Civ. P. 54(b).

by it to be sufficient."[24] Nevertheless, the "broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays."[25]

Generally, courts in this district evaluate Rule 54(b) motions under the same standard applied to Rule 59(e) motions (motions to alter or amend a final judgment).[26] To succeed under Rule 59(e) the moving party must:

> [C]learly establish a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise argument which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory. A [] court abuses its discretion if it 'bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence.'[27]

Although reconsideration is in the Court's discretion, precedent demands the movant clearly prove at least one of three (3) factors: (1) [A]n intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact."[28] Moreover, "Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments. Instead they 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"[29]

---

[24] *Melancon v. Texaco, Inc.*, 659 F.2d 551, 552 (5th Cir. 1981).
[25] *Gulf Fleet Tiger Acquisitions, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 282 F.R.D. 146, 152 (E.D. La. April 5, 2012); 18B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2002).
[26] *See, e.g., Lightfoot v. Hartford Fire Ins. Co.*, 2012 WL 711842, at *2 (E.D. La. March 5, 2012); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *3 (E.D. La. April 5, 2010); *Rosemund v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009).
[27] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005)); *Swanson v. Perez*, 250 Fed. Appx. 596, 598 (5th Cir. 2007); *Reyes v. Julia Place Condo. Homeowners Assoc., Inc.*, 2016 WL 3902606, at *3 (E.D. La. July 19, 2016).
[28] *Reyes*, 2016 WL 3902606, at *3 (citing *Schiller v. Physicians Res. Grp. Inc.*, 341 F.3d 563, 567 (5th Cir. 2003)).
[29] *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 565 (E.D. La. 2013) (citing *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990) and quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

Although, not specifically argued by Bevolo,[30] the only applicable factor in this case is number (3)—that the Court committed a manifest error of law or fact. A manifest error is "evident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence, and self-evidence."[31] It is "'is plain and indisputable, and [] amounts to a complete disregard of the controlling law.'"[32] Accordingly, Bevolo must overcome a high bar for the Court to reconsider its ruling, and Bevolo has failed to meet its burden.[33]

### B. Contested Matter versus General Discovery

The first consideration by the Court is the proper rule of procedure applicable to Bevolo's discovery requests. Two (2) are possible, Bankruptcy Rule 2004 or Bankruptcy Rule 7026.

A Rule 2004 examination "is unfettered and broad and is commonly recognized as more 'in the nature of a fishing expedition.'"[34] However, "courts limit use of Rule 2004 when an adversary proceeding or contested matter is pending, since Rule 2004 is broader in scope than the ordinary rules of discovery."[35] Bevolo argues that this conflict does not constitute a contested matter, because Debtor never formally objected to its claims. As a result, Bevolo seeks permission to conduct a Rule 2004 examination admitting that its discovery request is akin to a fishing expedition.

---

[30] Bevolo did not apply the standard generally applied in this Court for a Motion to Reconsider. In fact, it did not mention any burden it needed to overcome for the Court to grant its Motion. *See* P-157.
[31] *U.S. v. Shepherd*, 2011 WL 2173803, at *1 (E.D. La. June 2, 2011) (quoting *In re Energy Partners, Ltd.*, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (internal quotation marks omitted)).
[32] *Pechon v. La. Dep't of Health & Hosp.*, 2009 WL 2046766, at *4 (E.D. La. Oct. 6, 2010) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).
[33] *See* P-157.
[34] P-157 at 9 (quoting *In re Correra*, 589 B.R. 76, 108–09 (Bankr. N.D. Tex. 2018)).
[35] 9 Collier on Bankruptcy P 2004.01 (16th ed. 2019).

Contrary to Bevolo's assertion,[36] this dispute arises from a contested matter. The matter before the Court began when Debtor contested any alleged damages due Bevolo based on Debtor's rejection of the Supplemental Agreement. Those damages were asserted by Bevolo in Claim No. 6. As such, Debtor has objected to Bevolo's claim.[37] Thus, Bevolo's request for discovery must fit within the strictures of Bankruptcy Rule 7026.[38]

But even if this dispute did not constitute a contested matter, the more broad Rule 2004 examination would still be inappropriate. "[C]ourts have refused to allow questioning under the guise of Rule 2004 that was not primarily intended to further the goal of maximizing the value of the estate."[39] Bevolo does not offer any justification under this standard. Conversely, Debtor provides a number of reasons why this discovery will negatively effect the estate including that:

> [In 2013,] [t]he process was expensive and time consuming, and resulted in Flambeaux losing dozens of customer[s]. Bevolo's proposal will likely result in Flambeaux incurring similar losses of time, money, and customers, and is unnecessary since Bevolo has not provided any evidence that Noncompliant Lanterns may have impacted its business.

When weighed against the potential economic and reorganizational costs to the Debtor the Court correctly denied Bevolo's discovery request even if Rule 2004 were appropriate.

### C. Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure Rule 26 is made applicable in bankruptcy through Bankruptcy Rule 7026. Rule 26 states:

---

[36] P-157 at 9.
[37] Advisory Committee Notes, Fed. R. Bankr. P. 9014 ("Even when an objection is not formally required, there may be a dispute.").
[38] *See* Fed. R. Bankr. P. 9014; *Correra*, 589 B.R. at 108–09.
[39] Brad B. Erens and Kelly M. Neff, *Confidentiality in Chapter 11*, 22 Emory Bankr. Dev. J. 47, 71 (2005) (citing

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[40]

Additionally, a court must limit discovery if:

> (I) the discovery sought is unreasonable cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).[41]

The "party seeking the discovery must be able to 'articulate the possible linkage between discovery sought and admissible evidence.'" Nevertheless, Bevolo repeatedly fails[42] to articulate any fact or reason for this Court to compel the information Bevolo seeks.

Under the Supplemental Agreement, each of Debtor's 2013 customers was contacted through a mediator and asked to execute an agreement requiring the return or exchange of Noncompliant Lanterns whether held as inventory or for display. If a customer failed to respond, Debtor was required to cease business with that customer. As a result, Debtor conducts business with approximately 22 third party sellers none of whom hold inventory[43] and only a few of whom have displays. These third party sellers were either non-existent in 2013 or executed the letter agreements.

---

[40] Fed. R. Civ. P. 26(b)(1).
[41] *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, No. CV 17-405-JWB-RLB, 2019 WL 1950394, at *2 (M.D. La. May 1, 2019); *see* Fed. R. Civ. P. 26(b)(2)(C).
[42] Bevolo has specifically failed to articulate anything three times–in its initial motion requesting the Court compel Debtor to abide by its discovery request, at the hearing on April 30, 2019, and in this Motion.
[43] Debtor's product is now distributed through two (2) distribution centers.

Bevolo seeks discovery on Debtor's original eighty (80) third party sellers in an effort to prove that a Noncompliant Lantern may still exist. Bevolo insists on this discovery despite the fact that at least seventy-five percent (75%) and perhaps more of these parties no longer do business with Debtor, and its original action is now six (6) years old.

Bevolo argues Debtor's 2013 customer list and further questioning of its eighty (80) customers is necessary to calculate rejection damages. But Bevolo misses the critical point. The rejection damages are for new violations of its trademark, those occurring immediately prior to the Petition Date.

Since the damages incurred as a result of Debtor's 2013 infringement are already contained in the Judgment and enforceable through the terms of the Supplemental Agreement, Debtor's rejection only affects the enforcement of future obligations under the Supplemental Agreement, specifically, Debtor's obligation under Bevolo's trademark license.[44]

Under the Supplemental Agreement, Bevolo granted Debtor a trademark license. In exchange, Debtor granted Bevolo a liquidated damages provision for violations of the trademark's use. Rejection of the Supplemental Agreement only applies to conduct of Debtor immediately prior to the bankruptcy petition date. Therefore, Bevolo's rejection damages are limited to losses it will sustain in the future due to a breach of the trademark license. Those are the only potential violations affected by the rejection.

Instead, Bevolo continues to focus its request on 2013 customers' information in an effort to determine if Noncompliant Lanterns still exist on display or in inventory. Bevolo has no reports

---

[44] *See In re CVA Gen. Contractors, Inc.*, 267 B.R. 773, 777–78 (Bankr. W.D. Tex. 2001)(explaining that in *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077 (5th Cir. 1994): "The Fifth Circuit wisely held that rejection has an important but appropriately narrow function: it relieves the estate and non debtor parties from *future* performance obligations . . .") (emphasis in original)).

that any of Debtor's existing or former customers have such products, it has found none itself, and Debtor no longer does business with any customer who has not certified the absence of Noncompliant Lanterns. Bevolo fails to articulate the link between its discovery requests and the subject of the matter before the Court.

Thus, Bevolo failed:

> [T]o articulate any allegation, fact, report, or reason which might warrant investigation into the business activities, past or present, of vendors, distributors, or customers of Flambeaux products, regarding potential violation of its trademark or the rejected settlement agreement between Bevolo and Flambeaux.[45]

This Motion also fails to articulate any new facts or otherwise previously unknown circumstances that might change the Court's prior ruling. As such, no manifest error of law or fact exists.

### III. Conclusion:

Bevolo has thrice failed to adequately articulate any facts or circumstances that warrant its broad discovery request. That "discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify [a] discovery request."[46] Furthermore, Bevolo has failed to show that this discovery is primarily intended to help maximize the estate. Therefore the Court's initial denial of the discovery request does not exemplify a manifest error of law or fact and there is no justification for the Court to reconsider its ruling.

---

[45] P-155.
[46] *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990).

For these reasons, this Court DENIES Bevolo's Motion to Reconsider Discovery Ruling and reiterates its initial decision to deny Bevolo's discovery request.

An Order in accord with these Reasons will be entered separately.

New Orleans, Louisiana, May 31, 2019.

                                            Hon. Elizabeth W. Magner
                                            U.S. Bankruptcy Judge